**In re Louella Cain MILLER, Debtor.**

**No. 97–10434.**

United States Bankruptcy Court,
E.D. Texas,
Beaumont Division.

March 29, 2000.

Stephen Zayler, Chapter 7 Trustee, Lufkin, TX, for Chapter 7 Trustee.

Ralph Shilling, Jr., U.S. Department of Justice, Tax Division, Dallas, TX, for Internal Revenue Service.

### MEMORANDUM OF DECISION REGARDING TRUSTEE'S MOTION FOR DETERMINATION OF ESTATE'S TAX LIABILITY TO THE INTERNAL REVENUE SERVICE

BILL G. PARKER, Bankruptcy Judge.

Before the Court for consideration is the Motion for Determination of Estate's Tax Liability to the Internal Revenue Service (the "Motion") filed by Stephen Zayler, Chapter 7 Trustee, ("Trustee") on July 27, 1999 in the above-referenced Chapter 7 case. The Trustee seeks from this Court a resolution of a dispute with the United States Internal Revenue Service ("IRS") over whether this Chapter 7 bankruptcy estate has incurred an income tax liability during the administration of this case. This determination rests solely upon whether, as the Trustee asserts, the fees and expenses generated and paid solely as a result of the administration of a Chapter 7 estate are fully deductible on a bankruptcy estate's final tax return or whether the IRS is correct that such administrative expense payments constitute only miscellaneous itemized deductions and therefore are deductible only to the extent that such payments exceed two percent (2%) of the adjusted gross income of the bankruptcy estate for that particular tax year.

### I. JURISDICTION

This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The Court has the authority to enter a final order regard-

ing this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Louella Miller filed a voluntary petition under Chapter 7 of the Bankruptcy Code on March 11, 1997. Pursuant to Federal Rule of Bankruptcy Procedure 2002(e), the case was noticed to all creditors as a "no asset" case. On November 14, 1997, this Court sustained the Chapter 7 Trustee's objection to the debtor's claim of exemption on a tract of real property in Hull, Texas, thereby creating an estate asset which the Trustee was required to administer. The Trustee proceeded with his efforts to liquidate this asset and, on May 14, 1998, the Court signed an order approving the Trustee's sale of the property. The Chapter 7 estate realized net proceeds of $14,266.00 as a result of the sale. Following his review of claims and the preparation of motions for allowance of administrative expenses for estate professionals, the Trustee filed the estate's final tax return on March 9, 1999.

The estate's final tax return reflected the following income and deductions:

| | |
|---|---|
| Interest Income | $ 405.00 |
| Capital Gain | $14,266.00 |
| Other Income | <$ 9,433.00> |
| | |
| Adjusted Gross Income | $ 5,238.00 |
| | |
| Standard Deduction | <$ 3,550.00> [1] |
| Exemption | <$ 2,700.00> |
| | |
| Taxable Income | $ 0.00 |

1. Pursuant to 26 U.S.C. § 1398(c)(3), an estate which does not itemize deductions is entitled to take the standard deduction which could be taken by a married individual filing a separate return.

2. An order was entered on January 7, 1999 allowing the Trustee's application for administrative expenses in the amount of $5,551.58. A separate order was entered on April 19, 1999 allowing the application for administrative expenses on behalf of the estate's CPA in the amount of $350.00. The balance of the administrative expense claim relates to the Trustee's compensation in this case in the amount of $3,531.00.

The negative amount placed in the category of "other income" represents a deduction claimed by the Trustee for various administrative expenses[2] which were incurred by the bankruptcy estate in administration of the case.

On April 30, 1999, the IRS notified the Trustee that the final tax return submitted on behalf of the bankruptcy estate had been selected for examination. By letter dated June 24, 1999, the IRS informed the Trustee that it had disallowed the $9,433.00 deduction taken by the estate in arriving at adjusted gross income. Instead, the audit report prepared by the IRS allowed the $9,433.00 deduction as a miscellaneous itemized deduction, and disallowed the standard deduction, resulting taxable income of $1,246.00 to the Chapter 7 Estate.

In response to the IRS audit, the Trustee filed the present motion for this Court to determine the tax liability of the estate.[3] The IRS filed a timely response in which it stood by the propriety of its audit results. At the hearing on the Motion, the Trustee offered the testimony of David Tamminga, the certified public accountant who had prepared the estate tax return. Mr. Tamminga, who has gained considerable experience in the area of bankruptcy estate tax returns by filing over two hundred such returns in his career, opined that it was proper for a bankruptcy estate to take an "above the line" deduction[4] for the pay-

3. This Court is statutorily authorized to make this determination pursuant to 11 U.S.C. § 505(a)(1) which states, in pertinent part, as follows:

 ... the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

4. The term "above the line" is a term commonly used by tax professionals to refer to those deductions allowable in arriving at adjusted gross income.

ment of expenses which arose in connection with the administration of the estate. Mr. Tamminga based his opinion upon the application of 26 U.S.C. § 67(e) and asserted that a bankruptcy estate is entitled to the same deduction for the payment of accrued administrative expenses which, as even the IRS recognizes, is routinely taken by other "estates."

The IRS presented legal argument, but no witnesses, in support of its position that a bankruptcy estate is not entitled, as are other "estates," to take an "above the line" deduction for paid administrative expenses. In its post-submission brief, prepared at the request of the Court, the IRS asserts that the provisions of § 67(e) are inapplicable and unavailable to a bankruptcy estate in the calculation of its income tax liability, and that the more specific provisions of 28 U.S.C. § 1398 *et seq.* control the deductibility of administrative expenses by a bankruptcy estate.

## III. *DISCUSSION*

 It is clear that "[i]n the tax arena, deductions are neither matters of right nor equity. They are exclusively items of legislative grace. Deductions in the code are not found by weighing or balancing equities; they are discovered by a parsing of the legislative language, and, in the case of an ambiguity, a review of the legislative history." *Dosher v. U.S.*, 730 F.2d 375, 376 (5th Cir.1984). Therefore, a particular expense is not tax deductible unless there is a specific statutory authorization for such deduction. Thus, before determining the type of deduction which a bankruptcy estate of an individual may take as a result of its payment of accrued administrative expenses, the Court must first determine if the Internal Revenue Code provides any deduction at all for such payments.

 26 U.S.C. § 1398 provides the general rules for the taxation of Chapter 7 and Chapter 11 bankruptcy estates in which the debtor is an individual. The general rule regarding deductions available to a bankruptcy estate is articulated in 26 U.S.C. § 1398(e)(3) which provides:

> *[E]xcept as otherwise provided in this section*, the determination of whether or not any amount paid or incurred by the estate is allowable as a deduction shall be made as if the amount were paid by the debtor, and as if the debtor was still engaged in the trades and business, and in the activities, the debtor was engaged in before the commencement of the case. (emphasis added)

This general rule simply provides that a bankruptcy estate is only entitled to a deduction if the debtor would have been able to take such a deduction on her individual return. While this statute makes accessible to a bankruptcy estate those types of deductions which might ordinarily arise in the life or business of any individual, it obviously does not contemplate the concept of an administrative expense—an expense which would not arise but for the filing of a bankruptcy case. In recognition of that problem, the Internal Revenue Code provides a specific exception to this general rule in 26 U.S.C. § 1398(h)(1) which states:

> Any administrative expense allowed under section 503 of title 11 of the United States Code, and any fee or charge assessed against the estate under chapter 123 of title 28 of the United States Code, to the extent not disallowed under any other provisions of this title, shall be allowed as a deduction.

 In its post-hearing brief, the IRS argued that the above section should be considered as the general rule and that § 1398(e)(3) should be applied as a limitation on that general rule. However, that statutory construction cannot withstand scrutiny. It not only ignores the clear prefatory language with which the text of § 1398(e)(3) begins, "[E]xcept as otherwise provided in this section," it ignores the raison d'etre for the existence of § 1398(h)(1)—to insure that administrative expenses are deductible, notwithstanding the fact that they would never ordinarily

arise in the trade or business of the debtor. The statutory construction offered by the IRS in this context is self-serving and faulty. § 1398(h)(1) recognizes the deductibility of paid administrative expenses, notwithstanding the general rule cited in § 1398(e)(3) for making determinations as to the deductibility of certain payments.

Thus, it is clear that an individual Chapter 7 or Chapter 11 bankruptcy estate is entitled to a deduction for administrative expenses. However, the Court must resolve the type and nature of the deduction to which the bankruptcy estate is entitled. Should the deduction be taken "above the line," that is, characterized as a deduction in arriving at adjusted gross income? Or is the administrative expense deduction merely another miscellaneous itemized deduction which may be utilized by a bankruptcy estate only to the extent that the aggregate amount of such expenses exceeds two percent of the adjusted gross income of the estate?[5] The resolution of this dispute must necessarily focus upon the provisions of 26 U.S.C. § 67.

■ While 26 U.S.C. § 67(a) espouses the general two-percent rule, it contains exceptions to that general rule. One such exception is set forth in 26 U.S.C. § 67(e) under the title "Determination of adjusted gross income in case of estates and trusts" and which provides, in pertinent part, that:

> For purposes of this section, the adjusted gross income of an estate or trust shall be computed in the same manner as in the case of an individual,[6] except that-

(1) the deductions for costs which are paid or incurred in connection with the administration of the estate or trust and which would not have been incurred if the property were not held in such trust or estate . . .

. . . shall be treated as allowable in arriving at adjusted gross income.[7] Under regulations, appropriate adjustments shall be made in the application of part I of subchapter J of this chapter to take into account the provisions of this section.

There seems to be no dispute among the parties that, as to any other type of estate or trust, other than a bankruptcy estate, this provision accomplishes its apparent intent to allow an estate to take an "above-the-line" deduction for the payment of the expenses which it incurred as a direct result of the administration of such estate. Such a provision recognizes the special character of such expenses and the fact that, though estate income taxes are computed in the same manner as that of a normal individual, these type of expenses arise uniquely in the context of an estate administration. The Trustee asserts that such a rationale equally applies to the administrative expenses incurred by bankruptcy estates and that there is no proper statutory construction under which a bankruptcy estate can be denied the unmistakable benefits of § 67(e). Although no cases specifically addressing this issue could be located by any party or the Court, the Trustee's position and the specific manner in which he utilized the administrative expense deduction is supported by at least one major bankruptcy treatise.[8]

---

5. 26 U.S.C. § 67(a) states the general rule imposing a two-percent floor on miscellaneous itemized deductions:
 In the case of an individual, the miscellaneous itemized deductions for any taxable year shall be allowed only to the extent that the aggregate of such deductions exceeds 2 percent of adjusted gross income.

6. This language is consistent with that of § 1398(c)(1) which, again, states the general rule that the taxable income of a bankruptcy

estate is computed in the same manner as that of an individual.

7. 26 U.S.C. § 63(d)(1) recognizes that a deduction "allowable in arriving at adjusted gross income" is not an "itemized deduction."

8. See 6 Norton Bankruptcy Law and Practice 2d § 128:9 (2d ed.1997) at p. 128-14 which states that:

Yet the IRS asserts that a bankruptcy estate is not an "estate" for the purposes of § 67(e) and that a bankruptcy estate is uniquely precluded from availing itself of the benefits of that statute. The IRS claims that the final sentence of § 67(e) limits the applicability of this *entire* subsection of the statute only to estates governed by subchapter J of Chapter 1.[9] However, this final sentence upon which the IRS bases its interpretation did not even exist in the original text of this statute in the Internal Revenue Code of 1986. The original text of § 67(e) consisted solely of the text recognizing the availability of the "above-the-line" deduction for administrative expenses.[10] The final sentence upon which the IRS relies was added as an amendment in 1988, along with the insertion of subsection (e)(2) pertaining to deductions allowable under subsections 642(b), 651, and 661. The regulations referenced in the final sentence were apparently unnecessary until the addition of subsection (e)(2), which is totally unre-

lated to the availability of the "above-the-line" deduction for administrative expenses. While the amendment of the statute in 1988 necessitated an alteration of its format, the text acknowledging the availability of the "above-the-line" deduction remained substantially unaltered. Thus, the mere amendment of § 67(e), to insert a statutory reference to regulations regarding the implementation of the new provisions of the statute in computing the taxable income of a Subchapter J estate, cannot properly be construed to prohibit a bankruptcy estate from utilizing a deduction clearly set forth in subchapter B in computing the taxable income of an estate.

The IRS further asserts, without authority, that Congress did not intend for this statute to apply to bankruptcy estates because it did not expressly use the term "bankruptcy estate" within the confines of § 67(e). While it is obvious that the term "bankruptcy estate" is not utilized in § 67(e), the term "estate" does appear. The term "estate" is not defined in the

Administrative expenses that would not be allowed except for the fact that (sic) Title 11 petition was filed could be considered deductions for adjusted gross income or deductions from adjusted gross income in the form of itemized deductions. With the two percent limitations on miscellaneous itemized deductions added by the Tax Reform Act of 1986, the amount of administrative expenses allowed could be reduced significantly if these costs are listed as itemized deductions. Administrative costs are not included in the list of exceptions to the two percent limitation. Since § 1398(h) provides that these costs are deductible and, if not used, can be carried back three or forward seven years, it would appear that they should be considered deductions for adjusted gross income. These administrative expenses could be listed as a negative value in the other income category on the front of form 1040.

9. Subchapter J of Chapter 1 of the Internal Revenue Code, 26 U.S.C. §§ 641–692, deals with the taxation of "estates, trusts, beneficiaries, and decedents." While no one can overlook the fact that the Congress, in structuring the Internal Revenue Code, provided a separate subchapter under chapter 1, namely subchapter V, for estates created under Title 11 (with separate treatment provided therein for

bankruptcy estates of individuals as distinguished from partnerships and corporations), and that it further provided a separate subchapter of chapter 1(J) containing special rules regarding estates created under other circumstances, it seems clear that, absent a statute expressly stating otherwise, a bankruptcy estate of an individual whose income taxation is governed by subchapter V and an estate whose income taxation is governed by subchapter J may both utilize the various deductions available to them under subtitle A of Chapter 1 of the Internal Revenue Code. That would include the provisions of § 67(e).

10. The text of § 67(e), as contained in the main bound volume of the U.S.C.A. (26 U.S.C. § 67(e)) (West 1988) at p. 700, reads as follows:

For purposes of this section, the adjusted gross income of an estate or trust shall be computed in the same manner as in the case of an individual, except that the deductions for costs which are paid or incurred in connection with the administration of the estate or trust and would not have been incurred if the property were not held in such trust or estate shall be treated as allowable in arriving at adjusted gross income.

statute, but it is significant to note that the statutory references contained within the confines of subchapter V, and § 1398 in particular, do not utilize the term "bankruptcy estate" either, although the "estate" to which such references are made is clearly a bankruptcy estate. Thus, the IRS' extrapolation of congressional intent regarding the applicability of § 67(e) based simply upon the use of the term "estate" cannot withstand scrutiny. Had Congress intended to limit the application of § 67(e) to all non-bankruptcy estates, it could have easily done so by using more precise terminology or by specifically excluding bankruptcy estates. It did not. Thus, whether utilizing a plain language analysis,[11] or a more public policy analysis,[12] the Court concludes that the proper construction of § 67(e) does not preclude a bankruptcy estate from utilizing the benefits afforded by that statute.

Notwithstanding the provisions of § 67(e), the IRS asserts that its position, that the payment of administrative expenses by a bankruptcy estate can only be taken as a miscellaneous itemized deduction on the estate's tax return, must be upheld because it is supported by language contained in Publication 908—the "Bankruptcy Tax Guide."[13] This is hardly a stunning revelation, given that Publication 908 is an IRS publication and understandably articulates the IRS' own interpretation of the statute, undoubtedly taken in conjunction with its legitimate mandate to maximize the amount of income collected by the federal government. However, a litigant may not properly cite its own composition as persuasive, much less binding, authority and, even if it were produced by a more independent source, Publication 908 fails to offer the slightest bit of analysis or reasoning for its conclusion that administrative expenses can only be treated as an itemized miscellaneous deduction and it wholly fails to even mention the possible application of 26 U.S.C. § 67(e) and its effect on the deductibility of administrative expense payments.

Finally, the IRS urges the Court to adopt the rationale used by the bankruptcy court in *In re Sturgill*, 217 B.R. 291 (Bankr.D. Oregon 1998). In *Sturgill*, the estate's final tax return reflected gross income of $51,178.00. In computing the estate's adjusted gross income, the Trustee deducted legal fees and expenses incurred by the estate as a business loss. Furthermore, the estate took the standard deduction in arriving at taxable income. The return was submitted to the IRS and an audit was conducted. In its audit report, the IRS disallowed the business expenses deduction and, instead, allowed these expenses to be deducted as a miscellaneous itemized deduction. The trustee filed a motion with the bankruptcy court to determine whether or not the estate was entitled to take the deduction for administrative expenses above the line. In presenting his argument for the "above-the-line" deductibility of his administrative expenses, the trustee unfortunately did not

11. The term "estate" is defined in the Black's Law Dictionary (6th ed.1991) as "the degree, quantity, nature, and extent of interest which a person has in real and personal property" and, since that virtually defines the scope of a bankruptcy estate under 11 U.S.C. § 541, it would seem that, based upon an "ordinary, contemporary, common meaning," see, *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 388, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993), the statute would apply to the computation of the tax liability of a bankruptcy estate.

12. It would seem to the Court that the "above-the-line" deductibility of administrative expense payments, as authorized by § 67(e), serves an equally important, if not superior, public purpose when utilized by a bankruptcy estate, as opposed to another type of estate or trust, since the utilization of the statute by a bankruptcy estate will undoubtedly further a clearly-articulated congressional intent—to maximize the ultimate monetary distribution realized by creditors in a bankruptcy case.

13. Internal Revenue Service, U.S. Dept. of Treasury, Pub. No. 908, Bankruptcy Tax Guide 4 (1996).

base his argument upon § 67(e). He instead argued that the estate was entitled to take the deduction "above-the-line" *as a trade or business expense* because he, *the trustee,* was in the business of administering estates. In rejecting the trustee's argument, the *Sturgill* Court found that "[b]ecause the payment of the trustee's professional fees was not incurred in connection with a trade or business in which the *debtor* engaged prior to commencement of the case, it cannot be claimed as a trade or business expense by the Estate." *Id.* at 296 (emphasis added).

Regardless of whether this Court agrees with the result in *Sturgill,*[14] it is simply inapposite to the issues presented in this case. The *Sturgill* Court did not consider the applicability of § 67(e). It was not asked to consider it. It simply decided the issue as framed and presented by the parties, namely, "whether it [the administrative expense payment] is a trade or business expense deductible in computing adjusted gross income, or an itemized deduction deductible in computing taxable income." *Id.* It answered that precise question, but did not proceed to consider whether other statutes might offer a bankruptcy estate an "above-the-line" deduction in computing its adjusted gross income. Thus, the *Sturgill* opinion offers little assistance to, much less persuasive authority for, the IRS' position in this case.

## IV. CONCLUSION.

This Court concludes that a bankruptcy estate is, in fact, one of the types of "estates" for which 26 U.S.C. § 67(e) was designed and that the bankruptcy estate created at the inception of this bankruptcy case may indeed utilize its provisions. The Court therefore concludes that the deduction of $9,433.00, arising under 26 U.S.C. § 1398(h)(1) as a result of the payment of

the expenses incurred in the administration of the bankruptcy estate in this case, was properly taken "above-the-line" by this bankruptcy estate in computing the adjusted gross income on its tax return and that, following the application of other available deductions and exemptions, the bankruptcy estate in this case has no taxable income from which a federal income tax liability can legitimately arise.

This result is not only the product of proper statutory construction, it is an appropriate resolution to what otherwise might be a brewing conflict between the public policies undergirding the respective enactments of the Bankruptcy Code and the Internal Revenue Code by the Congress. While the monetary amounts involved in this particular case are undoubtedly insignificant, the positions articulated and relied upon by the IRS in this case have serious implications. In a larger bankruptcy estate, the endorsement and application of those interpretations would undoubtedly create a substantial tax debt and mandate a significant diversion of funds which otherwise would rightfully be distributed to creditors, all based upon a questionable statutory analysis. While this Court willingly acknowledges the critical and often thankless job that the IRS is statutorily mandated to perform, the Court cannot endorse nor disregard the Service's dubious interpretations in this particular instance because of the serious implications which would arise from the application of those interpretations in future bankruptcy cases; implications which directly contravene Congress' stated objective in its enactment of the Bankruptcy Code—to maximize distributions to creditors whose rights have been altered as a result of the filing of a bankruptcy case.

This memorandum of decision constitutes the Court's findings of fact and con-

14. This Court obviously believes that the *Sturgill* Court misconstrued the proper interrelationship between 26 U.S.C. § 1398(h) and 26 U.S.C. § 1398(e)(3). As stated earlier, § 1398(h) acts as an exception to the general rule, set forth in § 1398(e)(3), that a deduction can only be taken by the bankruptcy estate if the debtor would have been entitled to take the deduction.

clusions of law[15] pursuant to Fed.R.Civ.P. 52, as incorporated into contested matters in bankruptcy cases by Fed.R.Bankr.P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

15. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.